The next case will be 095090 Wilkerson v. the Secretary of Health and Human Services, Mr. Conway. Good morning, Your Honor. My name is Kevin Conway and with me is Ronald Homer. We represent Otto Wilkerson. Otto was a 12-year-old boy from Bend, Wisconsin. Otto was born on May 3, 1977. His childhood was very typical for no significant health problems. His pediatric records show that he just had common ailments. He had all of his vaccination records. His mother said, however, that he was a very active child. He had very hyperactive motor skills. He was very aggressive. He had behavioral problems. She was constantly going to the pediatrician to try and find out if there was some allergy or some reason for this. The pediatrician expressed no concern. It wasn't until Otto went to the first grade. He was evaluated and he was found to have ADHD, which is attention deficit hyperactive disorder. He filed a petition in the vaccine program 17 months later saying that his ADHD was caused by mercury in vaccines. The respondent filed a motion to dismiss. With it, they filed an opinion by a pediatric neurologist, Dr. Herskowitz. Dr. Herskowitz said that Otto's first symptoms began when he was four and a half years old. If they began when he was four and a half years old, then his petition was untimely filed. Subsequent to that, this court issued a ruling in the Markovich case. Otto retained an expert, Dr. Marcel Kinsbone, also a pediatric neurologist, and asked him a different question. We didn't ask Dr. Kinsbone when the first symptom began, but we asked him, when was the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large? Dr. Kinsbone explained that at four and a half years old, there's no way that the medical profession would have identified any injury at all. ADHD, typically, if boys with symptoms similar to that, up to 90% of the time, they turn out to be fine. Unfortunately, Otto was not one of those people. However, in Otto's case, the medical profession at large would not have identified any injury at all until after his sixth birthday. In Dr. Kinsbone's opinion, Otto's petition was timely filed. The Chief Special Master wrote a decision saying, hey, I read Markovich too, and Markovich says it begins with the first symptom, or the manifestation of the first symptom, whichever comes first. And the Code of Federal Claims agreed. And the respondent today will say, Markovich says the statute of limitations begins with the first symptom, or the manifestation of onset of the first symptom, whichever comes first. And Otto concedes that that's where Markovich begins. But that's not where Markovich ends. The Markovich panel thoroughly investigated all the law on the subject. It looked at White Cod, the only Supreme Court case in the vaccine program's history, that talked about onset and manifestation of onset. It looked at the Setney's case, a claims court decision, that talked about very subtle onsets, like in autism cases, and like in Otto's case too. It looked at the Markovich case, its own case, where the symptoms were very subtle seizures. And they said, okay, we need a test that we can use across the board for when these statute of limitations begin. And so they devised a test. And the test was to separate parents' observations from medical observations, to make it a medical objective test. And that test would be the first event objectively recognizable as a sign of a vaccine injury by the medical professional at large. And that is the only test that makes sense. To have a test where it's simply the first symptom, that means that the statute of limitations in a vaccine case could expire before the medical professional identified any injury at all. It's just not an interpretation that makes sense. The Markovich court was very, very careful in devising a test that takes into consideration congressional intent. Markovich said more than that, didn't it? It also said not just that the standard is medically objective rather than the parent's awareness of it, but it also stressed the fact that Congress used the word or. And therefore the statute began to run when either of these two conditions were satisfied. That is a first symptom or the manifestation of onset. Am I wrong in thinking that in this case both experts, yours and the government's, agreed that the first symptom occurred more than 36 months before the suit was filed? You're correct, Judge. That is correct. However, I think that the record would also show that the medical community at large at the time of four and a half months prior to the time the statute began running, at that age the medical community at large would not have recognized any injury whatsoever. Isn't it a fair inference to say that if both the experts agreed on the date, it's reasonable that the medical community at large agreed on it? No, that's not what the record indicates, though. The record indicates that these symptoms typically go away. Ninety percent of these children are fine. The medical community at large, like all those doctors, so no problem. If that same medical community that today looks back and says, oh yeah, that's the first symptom, if we could bring them back to when Otto was four and a half, they would have had no problem with it. They would have said, hey, you know, it's going to go away. Just like Otto's doctor said, it's going to go away. So you can't just take the first symptom literally. You have to take it in context with the rest of the reading of Markovitch, the panel. It was recognized in Markovitch. I believe there's a statement in there that many of these first symptoms go away. Didn't Markovitch even recognize that? And that was one of the reasons Markovitch drew the distinction between the two categories? But, Your Honor, they devised a test, and the test is the statute of limitations does not begin to run until the first event objectively recognizable as a sign of a vaccine injury, as a sign of an injury by the medical profession at large. And if you apply that test, and you must apply that test, you're bound by precedent, then Otto's statute of limitations, his filing was timely, because the medical community at large would not have recognized any problem whatsoever at four and a half months. And granted, through the retrospective scope, looking back today, the first symptom probably was like more than 36 months before he filed. But that's not the legal test. We're not talking about a clinical medical system. We're talking about a legal trigger. What's the legal trigger for the statute of limitations? The legal trigger is this test devised by the Markovitch panel, which is a test that takes into consideration white cotton, takes into consideration setanies, takes into consideration congressional intent, takes into consideration the wording of the statute, and devises a test which does not have an absurd result, where the statute of limitations could expire before any injury at all was identified.  This is a program that wants people to participate in it. It's to avoid civil litigation. Unfortunately, Congress did not examine tolling provisions. In all 50 states outside the program, the statute of limitations are tolled for minors. It doesn't begin to run until a minor is 18. It's tolled for mental handicaps. Congress didn't do that in this case. I looked at the congressional record. There's no mention of it one way or the other. But the daily work of this court is to fill in congressional oversights. And this court did that in Markovitch. They said, okay, what is a rational, reasonable way to approach this? And the rational, reasonable way to approach it was to devise this test. Forget the parents, forget what they say, forget the subtle symptoms. When will the medical profession at large first say we have an injury? And this case was after Otto was 6 years old and his petition was timely filed. Thank you. Judge Patton. Thank you. It seems the petitioner is more upset with the language of the statute rather than Markovitch. Judge Friedman, I think you had started along that line, and Markovitch makes clear that Section 16A.2 of the Act, the statute of limitations, runs from the first symptom or manifestation of onset, and they very clearly say whichever occurs first. In this case it's relatively simple, and Judge Hodges' very brief decision is telling on this in that both experts agreed that the first symptom of Otto's injury was November 3rd, or no later than November 3rd, 2001, more than 36 months before the petition was filed. And the inquiry ends there. We have the medical community at large, two experts agreeing on the onset of the condition. Under Section 16A.2 and Markovitch, the case is time-barred, and the special master, chief special master, was correct in dismissing the case, and Judge Hodges was correct in affirming that decision. Petitioner's argument on no retrospective review is just absolutely contrary to the way the Act has been interpreted for 20 years. Petitioners frequently rely on an expert's review in hindsight to find causation in their cases. And as both, as Markovitch said, you can't, the court in Markovitch said, you cannot interpret or apply the language of Section 11, which deals with causation, differently than Section 16, dealing with the statute of limitations. But, Ms. Patton, let me pose a hypothetical to you that could come up. Pediatricians are not perfect. Children are never perfect in trying to determine what their pains are or what their symptoms are. What if, in fact, there's a symptom that starts at 4 but it does not reappear until 7? Does that make a difference, even though the symptom started and noticed at 4 but never really reoccurred until he was 7 years old or she was 7 years old? Does that make a difference under the statute? It's just hard to conceptualize that, to see the symptom that occurred 3 years prior. There wouldn't be any other indicia of any injury until 3 years later. But I don't believe the way the statute is written that would make any difference. The statute clearly runs from the first symptom or manifestation. So a single symptom would start the statute running? Yes, sir. Even though it doesn't reoccur for a number of years after that? Yes, Your Honor, I believe under the language of the statute, 16A2 runs from the first symptom or manifestation of onset. And the Supreme Court in White Cotton has said there can only be one onset. Under your hypothetical, if we had an initial symptom and then 3 years later, if you see that as a separate onset of the condition, you end up with two onsets of the same injury, which the Supreme Court in the White Cotton case said you cannot have. There's one injury, one onset. Well, there's one injury and one onset. I can understand that. But symptoms sometimes are not picked up early enough, especially when you have pediatric conditions that sometimes do not reoccur for a number of years. A child can say, well, I have a pain in my tummy and it hurts. It could be anything, indigestion or otherwise. Two years later they determined that pain really was a problem with pancreas, just as an example. Would that mean that the particular onset was started 2 years before because of that one symptom that was diagnosed as a stomach ailment? I think if those two symptoms are both related to the same injury, then yes, the symptom that occurred 2 years prior is the first. No one diagnosed it as pancreatic problems. The statute doesn't run from diagnosis date. Congress could have had the statute of limitations run from a date of diagnosis, but they didn't. It's from the first symptom or manifestation of onset of an injury. So I think in your hypothetical the statute would run from that first symptom even if there were no other symptoms that appeared for another 2 years. I still think, based on the language of the Act, it runs from that first symptom. Even though there's no recurrence at all for that particular time period, the 2 years or 2 1⁄2 years, pick whatever? Yes, yes, because it runs from first. Again, the focus is on first and on onset. So if that symptom that you described, the tummy ache, was the first symptom under the Act, even if there were no other underlying, at least nothing that anyone noticed that continued for those 2 years, that's still the first symptom. It almost seems as if your hypothetical is saying that that tummy ache is the first symptom and then we have 2 years later some manifestation that shows the pancreatic. Let me change it to make it a more difficult case. Suppose, in Judge Gahosh's hypothetical, suppose it was the first symptom and then the recurrence was 38 months later. Now if you're right, when it recurred, the first time that they started to treat the child was 38 months later. At that time, I take it, any suit under the Vaccine Act is already barred. Yes, sir. I would think that would be the application of this statute. Even though, in the intervening 36 months, there was no reason to think they'd bring such a suit because the symptom had, one thing had happened and then it looked as though nothing was developing. Judge Gahosh's thing was pain in the stomach. 38 months later, the child begins to have more pain and then for the first time they really study it and they discover it's a pancreas problem. Too late. I think it would be too late under the way the statute is written. Congress specifically stated a 3-year statute of limitations. In the very exceptional cases, as the hypothetical you've presented, that they may be barred by that. The vast majority of cases where a symptom is recognized or an injury, the symptom of that injury is recognized, that wouldn't be the case. But I do think under that hypothetical, based on the statute of limitations as written by Congress, this 3-year, 36-month statute of limitations, I do believe that case would be time barred. But we are dealing with a very inexact science. Even most doctors would say that medicine is a very inexact science based upon the symptomatic type of an approach. Yes, sir, but when we look at the facts of this case, Your Honor, we see that both experts agreed in this case, in Otto Wilkerson's case, that the onset of his symptoms occurred no later than November 3, 2001. So that even if we are dealing with an inexact science, in this case our two experts both agree on the onset of this child's injury. But they didn't recognize it as an ailment. In this hypothetical we've been discussing, presumably this is a symptom, this tummy ache is a symptom of any number of things, including pancreatic, a pancreas problem that they didn't pursue, but they recognized there could be a problem. In this situation, they didn't know there was a correlation. At the time when these experts agreed that those were the first symptoms, nothing could have been done about it. I don't know that that's necessarily true. It's not clear from the record below that Petitioner, that Otto's mother, actually reported all of these symptoms to her doctor. So we don't really know what the doctors would have said at the time. But that's somewhat irrelevant in the act because we have so many cases where an expert comes in, and that's the first time there's, in some cases, ever any connection of the symptoms that Petitioner may claim occurred right after a vaccine. We do have experts that come in later on for causation purposes to place symptoms that don't occur in the record and determine that to be the onset of a condition. And here, again, we have the full picture. So yes, some of the problems, being a hyperactive child, kicked out of daycare after daycare, may not have developed into ADHD. So it's true that those symptoms may not have turned into anything, but they did. And we have the full picture here. The act indicates that the special master must take everything into consideration up until the time of judgment. So we can look at the full picture, and the experts, now knowing that he was eventually diagnosed with ADHD, can certainly look in hindsight to place the onset of that condition, which Dr. Herskowitz actually said it happened long before November 2001, but that was the latest date on which the symptoms began. But if we accept your interpretation of the statute, and any time you have a symptom which could eventually lead to serious conditions 36 months later, then the filing of an action after the 36 months when the condition is finally diagnosed would be out of time. It would be, but even in this case, that wasn't the set of facts, because at the time he was diagnosed, there still would have been time to file a claim here. I have difficulty imagining a case where there's a symptom, and then there's nothing in the records, no problems, for 36 months, and then something else occurs later. I think you said in your brief that when he was finally diagnosed, there was still a year within which to file suit. Absolutely, Judge Friedman. And we don't have to really, maybe we do, I don't know, deal with the problem where the diagnosis does not occur until more than 36 months after the symptoms arise. That's the more difficult case, because the diagnosis has been made, but it's too late to sue. Right, and it's not, as you said, Judge Friedman, it's not the set of facts that we have here that's not an issue, and I have difficulty, I guess, envisioning the hypothetical where that would occur, but even if it did, I think under the language of the Act, it would be barred, but again, those aren't the facts in this case here, and even after a diagnosis, there was still more than enough time to file a claim in the Vaccine Act. I suppose this case is particularly difficult because what turned out to be symptoms in some children are not symptoms. I mean, you know, the child is having some problems adjusting, and it may be that he's just a slow learner, or it may be something else, and you don't know until time elapses, and you see how it develops, if it develops into anything. It could, that could, and in this case, Petitioner's mother, Otto, was clearly looking for other problems before she had taken him for mercury testing, which interestingly, the mercury testing that she took him for that showed mercury toxicity, whether we agree that would have anything to do with the vaccines, we wouldn't, but she did that before, and she had found, excuse me, had taken him to doctors, had this testing, found these alleged high levels of mercury, and that occurs before Dr. Kinsborn, Petitioner's expert, would place the onset of any condition. That clearly wouldn't make any sense to wait until diagnosis of an injury to start the running of the statute of limitations when part of their allegations, a portion of their allegation, which was mercury toxicity, occurred prior to Dr. Kinsborn's dating of the onset, and diagnosis clearly can't be the basis for the running of the statute of limitations. There's not a discovery rule under the Vaccine Act. It's the first symptom or manifestation of onset. If there are no further questions, I think we've addressed everything else in our brief and ask you to affirm Judge Hodge's decision below. All right, thank you. Thank you. Mr. Conway. Judges, just briefly, the Markovich panel, you know, very carefully get considered. Again, congressional intent of the statute, the white cotton case, the facts in this case, the set in this case, and they came up with a test, with an objective legal test that would cover all these hypothetical situations. This case, the judges' case, the Clover case, which is before this court. This test is an objective test at that time. It's not a retrospective test. It's a test at that time. As the respondent says, both experts would probably agree in hindsight, using the retrospective scope, that the first symptom began when he was four and a half years old. But the only thing on the record is Dr. Kinsmore, who says that no, the medical community at large would not have recognized it until after his sixth birthday. If Dr. Herskowitz were here today, he'd probably say the same thing, that the medical community at large would not have recognized any injury because you can't diagnose ADHD until you get into a structured setting, like a school system. You just can't do it. You can't make these very specific diagnostic things. But you don't need to worry about dates of diagnosis, or dates of onset, or retrospective scope, or at that time, because you have a test in the federal circuit. You have already done your job. You have laid forth a test, which is the first, it begins, the legal trigger. The legal trigger is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large. That was after Otto's sixth birthday. His petition was timely filed. Thank you. Page is submitted.